# United States District Court

## SOUTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA

v.

D.D.M., A JUVENILE MALE

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:17-mj-00297

**SEALED**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

**Count One**: At all times material to this Complaint, the CVS Pharmacy located at 6290 North College Avenue, in Indianapolis, Marion County, Indiana, was engaged in the operation of a pharmacy open to the public in interstate commerce and in an industry that affects interstate commerce.

On October 13, 2015, in the Southern District of Indiana, Indianapolis Division, D.D.M., the defendant herein, did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect commerce and the movement of articles and commodities in such commerce by means of robbery, in that the defendant, D.D.M., did unlawfully take and obtain money and property from the person of, or in the presence of, an employee of the CVS Pharmacy against his will by means of actual and threatened force, violence, and fear of injury to her person, that is, by brandishing a firearm, and by taking controlled substances from the employees of CVS Pharmacy.

This act would have been a crime in violation of Title 18, United States Code, Section 1951(a) and Section 2 if D.D.M. had been an adult. All in violation of Title 18, United States Code, Section 5032.

**Count Two**: On or about October 13, 2015, in the Southern District of Indiana, Indianapolis Division, D.D.M., the defendant herein, did knowingly carry, use, and brandish a firearm during and in relation to a crime of violence, to wit: the robbery of the CVS Pharmacy located at 6290 North College Avenue, in Indianapolis, Marion County, Indiana in Indianapolis, Marion County, Indiana, charged in Count One of the Complaint. This act would have been a crime in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii) and Section 2 if D.D.M. had been an adult. All in violation of Title 18, United States Code, Section 5032.

**Count Three**: On or about October 13, 2015 within the Southern District of Indiana, Indianapolis Division, D.D.M. did unlawfully obstruct, delay, and affect commerce and the movement of articles and commodities in such commerce, by extortion, in that D.D.M. did unlawfully take or obtain personal property, that is, controlled substances that constituted the proceeds of a Hobbs Act Robbery, from an individual, Malik Perry, without his consent, induced by wrongful use of actual and threatened force, violence or fear. This act would have been a crime in violation of Title 18, United States Code, Section 1951(a) and Section 2 if D.D.M. had been an adult. All in violation of Title 18, United States Code, Section 5032.

**Count 4**: On or about October 13, 2015, in the Southern District of Indiana, Indianapolis Division, D.D.M., the defendant herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence, to wit: the robbery of Malik Perry, in Indianapolis, Marion County, Indiana, charged in Count Three of the Complaint. It is further alleged that the discharge of the firearm caused the death of a person and constituted the crime of murder. This act would have been a crime in violation of Title 18,

United States Code, Section 924(j)(1) and Section 2 if D.D.M. had been an adult. All in violation of Title 18, United States Code, Section 5032.

   I further state that I am a Special Agent, and that this complaint is based on the following facts:

## SEE ATTACHED AFFIDAVIT

**Continued on the attached sheet and made a part hereof.**

_____
Special Agent Steven Secor, FBI

**Sworn to before me, and subscribed in my presence**

April 21, 2017                                        at    Indianapolis, Indiana
**Date**

Mark J. Dinsmore, U.S. Magistrate Judge
**Name and Title of Judicial Officer**                **Signature of Judicial Officer**

# AFFIDAVIT

I, STEVEN T. SECOR ["**AFFIANT**"], being duly sworn according to law, depose and state as follows:

1.  I am and have been employed as a Special Agent with the Federal Bureau of Investigation ["**FBI**"] since September of 2003. Prior to that time, I spent 17 weeks training to be a Special Agent at the FBI Academy in Quantico, Virginia beginning on June 1, 2003. Through the FBI, I have received extensive training related to the investigation of federal crime to include violations of the Hobbs Act, violent crime, and firearms offenses. I am currently assigned to the FBI Violent Crime Task Force ["**VCTF**"] in the Indianapolis Field Office of the FBI. In this assignment, I investigate all manner of violent crime, including armed robberies which violate the Hobbs Act, and firearms offenses.

2.  I am an "investigative or law enforcement officer" within the meaning of Section 2510(7), Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

3.  This affidavit is submitted in support of an application for an arrest warrant for **D.D.M.**, black male, date of birth XX/XX/1998, whose true name and additional identifiers are known to me. **D.D.M.** is currently an adult, having reached the age of eighteen (18). However, the crimes alleged to have been committed by **D.D.M.** as outlined below occurred prior to **D.D.M.** reaching the age of eighteen (18).

4.  Based on my training and experience, and based on the facts below, probable cause exists to believe **D.D.M.** violated Title 18, United States Code, Section 5032 of the Juvenile Justice and Delinquency Prevention Act (18 U.S.C. § 5031-42). **D.D.M.** committed an armed, takeover-

1

style robbery of the CVS Pharmacy located at 6290 North College Avenue, Indianapolis, Indiana 46220, which would have been a violation of Title 18, United States Code, Section 1951, if **D.D.M.** was an adult at the time of the robbery. I further allege that **D.D.M.** possessed a firearm during this robbery, which would have been a violation of Title 18, United States Code, Section 924 (c)(1)(A)(ii), if **D.D.M.** was an adult at the time of the robbery. Following the armed robbery, I allege that **D.D.M.** committed another violation of Title 18, United States Code, Section 5032 of the Juvenile Justice and Delinquency Prevention Act (18 U.S.C. § 5031-42). This occurred when **D.D.M.** robbed a co-conspirator in the robbery, MALIK PERRY ["**PERRY**"], of the narcotics taken during the CVS robbery. This robbery would have been a violation of Title 18, United States Code, Section 1951, if **D.D.M.** was an adult at the time of the robbery. Finally, I allege that **D.D.M.** shot and killed the co-conspirator from whom he took the narcotics taken in the CVS robbery, which would have been a violation of Title 18 USC, Section 924(j)(1) if **D.D.M.** were an adult at the time of the robbery.

5. The statements contained in this affidavit are based in part on information provided by, and conversations held with, Special Agents of the FBI; Task Force Officers ["**TFOs**"] assigned to the Indianapolis **VCTF**; detectives and patrol officers of the Indianapolis Metropolitan Police Department ["**IMPD**"]; witnesses; and my experience and background as a Special Agent of the FBI.

6. I have not included each and every fact that has been revealed through the course of this investigation but set forth only the facts that are believed to be necessary to establish the required foundation for this issuance of the requested Warrant for Arrest.

## BACKGROUND OF THE INVESTIGATION

7. On October 13, 2015, at approximately 4:55 p.m., uniformed **IMPD** patrol officers were dispatched to the apartment complex at 3707 North Meridian Street, Indianapolis, Indiana on a report of several males loitering in the secured parking lot of the complex. The dispatched **IMPD** officers made contact with six (6) black males who appeared to the responding officers to be loitering together. Responding officers confirmed none of the group lived at the apartment complex and began to further investigate their presence inside a secured area meant for the residents of the complex.

8. During the investigation, one member of the group was seen to discard a small baggie containing ten (10) pills that were later confirmed to be 2mg Alprazolam, which is a Scheduled 4 controlled substance in the State of Indiana. The individual who discarded the baggie was positively identified as JUSTIN RUDOLPH ["**RUDOLPH**"]. **RUDOLPH** was placed under arrest by the responding officers for possession and dealing in a controlled substance. The investigation was closed at 6:22 p.m., and the remaining members of the group, to include **D.D.M.** and **PERRY**, were released at the scene. I know the true names and identifiers of the remaining members of the group who were released at the scene.

9. On October 13, 2015, at approximately 7:55 p.m., an armed takeover robbery of the CVS Pharmacy at 6290 North College Avenue, Indianapolis, Indiana was committed by five (5) armed individuals. Although the armed robbers wore clothing which concealed the majority of their facial features, victims of the robbery described all five robbers as young black males. The five robbers ["**R1, R2, R3, R4, and R5**"], all armed with handguns, entered through the front door of the pharmacy and went to the pharmacy counter, which was positioned just inside the front entrance. The pharmacy employees and customers were held at gunpoint while the robbers

attempted to gain access to the safe containing the narcotics. One of the robbers became angry when he was told by a pharmacy employee that he did not know the combination to the safe. Another pharmacy employee informed the robbers he could open the safe, but it was on a time lock. This further angered several of the robbers.

10. Several customers were approached by the robbers and ordered to the floor at gunpoint. Several of the customers had their personal belongings, including cell phones, taken from them by the robbers. One customer described one of the robbers as being approximately 5'2" tall and approximately 135 pounds.

11. The robbers were able to get some narcotics which were not stored in the safe, including multiple bottles of promethazine cough syrup. At approximately 7:55 p.m. all of the robbers fled the store, heading in an unknown direction. The robbers left the store before the time-locked safe opened.

12. On October 13, 2015, at approximately 8:09 p.m., 911 received a phone call in regards to shots fired in the area of 41st Street and Byram Avenue in Indianapolis, Indiana. At approximately 8:35 p.m., **IMPD** officers were dispatched to a report of a deceased person in the alley west and behind 4130 Byram Avenue, Indianapolis, Indiana.

13. **IMPD** officers responded to the report of the deceased person and located the body of **PERRY**, date of birth 02/17/1996. **PERRY** was deceased and appeared to have been shot multiple times, including a bullet entry wound to the back of the head. In the **IMPD** report of the incident, **PERRY** was described as being 5'2" tall and weighing 135 pounds.

14. On October 14, 2015 and autopsy was conducted on **PERRY** by Doctor Darin L. Wolfe of the Marion County Coroner's Office. The autopsy concluded that **PERRY**'s cause of death was multiple gunshot wounds and that the manner of his death was homicide. The autopsy

report confirmed that **PERRY** was shot multiple times, including a gunshot wound to the back of the head.

15. In 2015, there were over one hundred and fifty (150) pharmacy robberies in and around the Indianapolis metropolitan area. I have participated directly in the investigation into dozens of these robberies, along with law enforcement officers from other agencies and departments, including **IMPD**. These investigations have resulted in dozens of arrests, as well as suspect, witness, and victim interviews.

16. These interviews have resulted in a greater understanding of the tactics, procedures, and modus operandi utilized by robbers of pharmacies. Also gained through these interviews was an understanding of the familial and social relationships between the robbers. It was through these interviews that I learned several items of interest as they related to **PERRY** and ultimately his murder.

17. I learned that **PERRY** also went by the street name **MOOK**. Further, I learned **PERRY** participated in pharmacy robberies with other individuals whose names and identifiers are known to me.

18. I participated in multiple interviews of a Cooperating Witness ["**C1**"] whose true name and identifiers are known to me. C1 provided information related to the pharmacy robbery at 6290 North College Avenue on October 13, 2015. C1 also provided information as to the alleged murder of **PERRY**. Based on the information provided by C1, I have concluded that the robbery and alleged murder were related as follows:

19. Several males gathered in the late afternoon/early evening hours of October 13, 2015. The purpose of the gathering was to make plans to rob a pharmacy that evening. The group, to include **D.D.M.** and **PERRY**, gathered at an apartment complex on 36th Street and Meridian

5

Street in Indianapolis, Indiana. The group included **RUDOLPH** and three other black males whose names and identifiers are known to me. **C1** stated that the group was approached by police while in the parking lot of the complex. Ultimately, **RUDOLPH** was arrested by **IMPD** and removed from the scene. The remaining five black males were released by **IMPD**. The circumstances and location of this event as described by **C1** leads me to believe this incident was the incident during which **RUDOLPH** was arrested as described above.

20. **C1** went on to describe that **RUDOLPH** was to be the getaway driver for the planned pharmacy robbery that evening, however, due to the arrest, **RUDOLPH** was no longer able to drive the getaway car. One member of the group was an individual known to **C1** only as "**TORO**" or "**TOTE**." **TORO** was described as a black male, 28 to 29 years old, 6'1" to 6'2" tall, heavyset, with a lazy eye. To date, I have been unable to positively identify **TORO**. **TORO** was called in order to act as the getaway driver in place of **RUDOLPH**. **TORO** arrived in a white van to pick up the group.

21. The group then travelled in **TORO's** white van to the CVS pharmacy at 6290 North College Avenue. Based on the information provided by **C1**, I believe the group was composed of six (6) people total, including **TORO** as the getaway driver, **D.D.M.**, **PERRY**, and three (3) other people who planned to enter the pharmacy and commit the robbery.

22. The van arrived at the CVS pharmacy and parked in an alley behind it. I am familiar with the location and layout of the CVS and knows that an alley runs directly behind it, which connects to 63rd Street allowing access to College Avenue.

23. Five (5) individuals, including **D.D.M.** and **PERRY**, then went into the pharmacy to commit the robbery. All five were armed with handguns. The robbers were frustrated as they were not able to get into the narcotics safe and were only able to get a limited number of items

from the pharmacy, for example Tussinex and bladder pills. This description of the demeanor of the robbers corroborates the information provided by victims and witnesses to the robbery.

24. The group exited the pharmacy, ran to the waiting getaway car driven by **TORO**, and departed the area. I have viewed surveillance footage from the robbery of the CVS Pharmacy. While their faces are obscured, one of the robbers, who fits **PERRY's** height and weight, is wearing gray sweatpants, a gray hooded sweatshirt, and black and white athletic shoes.

25. The group departed the area and travelled in **TORO's** white van to an alley behind Byram Avenue. The van stopped in the alley and the group began the process of splitting up the items taken during the robbery. **D.D.M.** and **PERRY** began to argue about the narcotics that were obtained during the robbery. Specifically, **PERRY** felt there was not enough taken during the robbery to split six ways. **PERRY** became agitated enough that he grabbed the bag holding the items taken during the robbery. **PERRY** announced that he would not be splitting the pills at all and then exited the van and began to walk away with the bag of narcotics. **D.D.M.** also got out of the van as he did not want **PERRY** to leave with the items.

26. As **PERRY** was approximately ten (10) feet in front of the van, **D.D.M.** walked up behind **PERRY** with his gun extended and pointed at **PERRY's** back. As **PERRY** began to turn around and when **D.D.M.** was approximately six (6) feet behind **PERRY**, **D.D.M.** fired his gun striking **PERRY** in the back of the head. **PERRY** fell to the ground. **D.D.M.** then approached **PERRY's** prone body and fired additional rounds into it. While **PERRY** was armed at the time of the shooting, he did not have the gun in his hand, nor was he facing **D.D.M.** when he was shot.

27. **D.D.M** then grabbed the bag of pills off the ground next to **PERRY's** body. The other members of the robbery crew exited the van. **TORO** and **D.D.M** then departed in the van as the other members of the robbery crew fled on foot.

28. Responding IMPD homicide detectives noted that **PERRY** had been shot multiple times, including a bullet wound to the back of the head. Detectives also noted **PERRY** was wearing gray sweatpants, a gray hooded sweatshirt, and black and white athletic shoes. A spent 9mm shell casing was also recovered at the scene.

29. The string of allegedly related activities on the night of October 13, 2015 are summarized as follows: Based on an IMPD report from 3707 North Meridian Street, I know that D.D.M. and **PERRY** were together approximately two (2) hours before the robbery of the CVS Pharmacy on North College Avenue. Corroborative information provided by **C1** indicated the group planned a pharmacy robbery that evening. A pharmacy robbery occurred at 6290 North College Avenue wherein at least one victim witness described one of the robbers as being the approximate height and weight of **PERRY** and video surveillance footage shows a robber wearing gray sweatpants, gray hooded sweatshirt, and black and white athletic shoes. Approximately 30 minutes after the robbery, **IMPD** responded to a report of a deceased person behind 4130 North Byram Avenue. The deceased was identified as **PERRY** and that he was wearing gray sweatpants, gray sweatshirt, and black and white athletic shoes. **C1** described the pharmacy robbery as being committed by six (6) individuals including **D.D.M., PERRY**, and **TORO**- the getaway driver. **C1** further described an argument in an alley behind Byram Avenue between **D.D.M.** and **PERRY** with **D.D.M** subsequently shooting **PERRY** over pills taken during the robbery.

30. I have participated in several other interviews of Cooperating Witnesses who described a subsequent dice game, which took place on October 14, 2015. Multiple individuals were there, including **D.D.M** and **RUDOPLH**, who had been released from the Marion County Jail following his arrest on October 13, 2015. Several witnesses described **D.D.M** as trading a Glock 19 in his possession to **RUDOLPH** for a Glock 23. I am familiar with the Glock 19 pistol

8

and knows that it is chambered for 9mm ammunition. **D.D.M** was subsequently arrested by the Lawrence (Indiana) Police Department on October 16, 2016, for possession of marijuana, following a traffic stop. Law enforcement recovered a Glock 23 handgun from the vehicle.

31. Based on the above information, I have probable cause to believe that **D.D.M** committed several crimes in violation of Title 18, United States Code, Section 5032 of the Juvenile Justice and Delinquency Prevention Act (18 U.S.C. § 5031-42). If **D.D.M.** had been an adult at the time, his actions would constitute violations of Title 18, United States Code, Section 1951(a) (in that **D.D.M** participated in the armed robbery of the CVS at 6290 North College Avenue), Title 18 United States Code, Section 924 (c)(1)(A)(ii) (in that **D.D.M** possessed a firearm during this robbery), and a further violation of Title 18 United States Code, Section 1951(a) (in that **D.D.M** robbed **PERRY** of narcotics which had travelled in interstate commerce) and finally, I allege that **D.D.M** shot and killed MALIK **PERRY**, from whom he took the narcotics taken in the CVS robbery, in violation of Title 18 United States Code, Section 924(j)(1).

FURTHER YOUR AFFIANT SAITH NOT

Steven T. Secor
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me the 21st day of April, 2017, at Indianapolis, Indiana.

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

9